**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| JOSEPH RAY RIES, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| *versus* | § | No. 1:04-CV-367 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION**

Petitioner Joseph Ries ("Ries"), an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Ries challenges his death sentence imposed by the 8th Judicial District Court of Hopkins County, Texas, in Cause No. 99-15367, styled *The State of Texas v. Joseph Ray Ries*. Having reviewed the submissions of the parties, the state court record, and the applicable law, the Court finds the petition to be without merit.

I.    Facts

The details of the crime are summarized in *Ries v. State*, No. 73,737, at 2-3 (Tex. Crim. App. June 12, 2002):

> The evidence showed that [Ries] first met Robert Ratliff, the victim, in the fall of 1998. They formed a friendship, and at some point, [Ries] moved in to live with Ratliff. However, there was later a dispute about missing property, and [Ries] was evicted from Ratliff's house. On February 18, 1999, [Ries] and several associates stole a pickup truck from Ratliff's residence. [Ries] and Christopher White drove to San Antonio in the truck, but because the pickup did not get good gas mileage, they decided to return to the Ratliff residence and take a Lincoln Continental. They arrived at Ratliff's place on the evening of February 21st, but neither Ratliff nor his Lincoln Continental was present. [Ries] and White broke

into the house and took some items, including two .22 rifles.  Later that evening, they drove the pickup into a pond, so that the truck was completely submerged. Hiding behind a barn, they watched Ratliff come home and waited until the lights in the house were turned off (approximately thirty minutes later).

[Ries] and White then entered the house.  [Ries] sneaked into Ratliff's bedroom and took the victim's wallet and car keys.  Before exiting the room, [Ries] shot Ratliff in the back as he slept in bed.  The victim then awoke, and [Ries] shot him in the neck.  Hearing the noise, White entered the room and asked what had happened.  [Ries] sent White out of the room and fired one last, fatal shot behind the victim's ear.  [Ries] and White then took the Lincoln Continental and drove away.

II.   Background

On March 24, 1999, Ries was indicted for the capital murder of Robert Ratliff ("Ratliff"), the homicide having occurred during the commission of the burglary of Ratliff's residence.  While in custody, Ries gave a videotaped confession.  During his confession, when Ries was asked whether he was sorry for what he had done, he answered that he was and apologized to Ratliff's family.  Ries also discussed other crimes in which he had been involved.

During the guilt/innocence phase of Ries's trial, the prosecution played his confession for the jury, with his apology and his discussion of other crimes redacted.  Ries's counsel objected to the removal of the apology, but the trial court overruled the objection, finding that the apology was "self-serving hearsay."  On November 17, 1999, the jury returned a verdict of guilty.

At the punishment phase of Ries's trial, the parties stipulated to the admission of numerous records from the period when Ries was in the care of the State's Child Protective Services Department ("CPS").  The records established, *inter alia*, that Ries was of above-average intelligence; that he had been abused as a child, both physically and sexually, as well as by having food withheld; that his mother's parental rights had been terminated on two separate occasions; that he had been placed in eleven different foster homes; and that he had serious mental health

problems as a result, including anger, poor impulse control, disrespect for authority, and lack of empathy.  They also showed that, as a teenager, he had molested his step-sister and had stolen automobiles on two separate occasions.  Witnesses from the CPS elaborated on the information contained in the records.  Other witnesses included Ries's mother, who confirmed details of his upbringing, and two police officers, who testified that Ries's reputation in their communities for being peaceful and law abiding was bad.  A United States Marine Corps recruiter also testified about his contacts with Ries.  The victim's wife and a friend of Ratliff testified about the impact of the crime.  The prosecution again played the redacted videotape of Ries's confession; this time, the prosecution used the tape to support the State's closing argument that Ries had no remorse for his actions.  The prosecutor also stated to the jury that, in his personal opinion, Ries deserved the death penalty.  Defense counsel did not object to either the replaying of the redacted videotape or the arguments made by the prosecution.

On November 23, 1999, the jury returned three findings.  The jury found that Ries actually killed Ratliff, that there was a probability that he would commit future acts of criminal violence which would constitute a continuing threat to society, and that, considering all of the evidence, including the circumstances of the offense, his character and background, and his personal moral culpability, there were not sufficient mitigating circumstances to warrant a sentence of life imprisonment, rather than a sentence of death.  Based upon these findings, the trial court sentenced Ries to death.

On appeal, after rejecting Ries's four points of error, the Texas Court of Criminal Appeals affirmed his conviction and sentence.  *See id*. at 8.  Ries did not seek a writ of *certiorari* from the United States Supreme Court.  Subsequently, he filed an application for post-conviction relief in

state court, raising seven claims.  The trial court issued findings of fact and conclusions of law,

recommending that relief be denied on all seven claims.  The Texas Court of Criminal Appeals

adopted the trial court's findings, conclusions, and recommendations as to six of the seven claims,

but remanded the seventh claim (ineffective assistance of counsel) back to the trial court in order

for the record to be supplemented with an affidavit from Ries's attorneys "explaining why they

chose not to present mitigation evidence at the punishment phase of [Ries's] trial."  *Ex parte Ries*,

No. 57,892-01, at 2 (Tex. Crim. App. Mar. 3, 2004).   After receiving the affidavit, in which

Ries's counsel pointed out that they presented considerable mitigating evidence, including the CPS

records, the testimony of the CPS workers, and the testimony of Ries's mother, the Court of

Criminal Appeals found that Ries's trial counsel were "not ineffective" and denied his seventh

claim.  *See Ex parte Ries*, No. 57,892-01, at 2 (Tex. Crim. App. May 19, 2004).  On May 18,

2005, Ries filed the present petition for a writ of *habeas corpus*.

III.    Claims Presented

Ries raises three claims in his petition:[1]

1.    His trial counsel provided ineffective assistance by failing adequately to
      develop and present the case for mitigation at the punishment phase of his
      trial.

2.    His trial counsel provided ineffective assistance by failing to object to the
      prosecution's improper closing argument.

3.    His appellate counsel provided ineffective assistance by failing to raise on
      appeal the issue of the trial court's refusal to admit evidence of his remorse
      at the guilt/innocence phase of his trial.

---

[1]  Ries actually states that he is raising two claims in his petition, with his first claim having four
sub-claims.  For ease of analysis, the Court treats the fourth sub-claim of Ries's first claim as a separate
claim, labeling it his second claim.

4

IV.    Standard of Review

Title 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court determination that is objectively unreasonable meets the requirements of § 2254(d)(1). *See Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). Pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *See Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001). Factual findings made by the state court are accepted unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Title 28 U.S.C. § 2254(b) generally prohibits granting relief on claims not previously presented to the state courts. If a federal petition contains any such claims, the federal court will attempt to allow the applicant to return to state court and present them to the state court in a successive petition, either by dismissing the entire petition without prejudice, *see Rose v. Lundy*, 455 U.S. 509, 520-22 (1982), or by staying the federal proceedings, *see Rhines v. Weber*, 544 U.S. 269, 278 (2005).

If the federal court is convinced that the state court would refuse to consider the merits of such a successive petition, however, the federal court will treat the unexhausted claims as if the state court had already refused to hear them on procedural grounds. *See Finley v. Johnson*, 243

5

F.3d 215, 220 (5th Cir. 2001).  The federal court generally does not review procedurally defaulted claims unless the applicant can establish either that he had good cause for failing fairly to present his claims, and that he would be prejudiced by not being given an opportunity to do so in the federal court, or that the federal court's failing to address the claims would result in a fundamental miscarriage of justice.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *Finley*, 243 F.3d at 220.  If it is not entirely clear that the state court would refuse to hear a successive petition containing the new claims, however, the federal court will allow the state court the first opportunity to consider them.  *See Wilder v. Cockrell*, 274 F.3d 255, 262-63 (5th Cir. 2001).

V.     Discussion

        A.      Ineffective Assistance of Trial Counsel as to Mitigation Evidence

        Ries's first claim is that his trial counsel provided ineffective assistance by failing adequately to develop and present the case for mitigation at the punishment phase of his trial.  To obtain relief on a claim of ineffective assistance of counsel, an applicant must establish that his counsel's performance was deficient and that, had his counsel performed adequately, there is a reasonable probability that the outcome of his case would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  Ries contends that if his trial counsel had more effectively presented and argued the mitigating nature of his abusive and deprived upbringing, there is a reasonable probability that the jury would have answered the mitigating circumstances issue in the affirmative, rather than in the negative.  Specifically, he asserts that his counsel should have:  (1) discussed his background with potential jurors during *voir dire*, (2) questioned both prosecution and defense witnesses more extensively about and discussed in greater detail the

records of his abusive and deprived upbringing, and (3) discussed his background in a manner calculated to elicit sympathy from the jurors during closing argument.

      1.    <u>Exhaustion</u>

Respondent Nathaniel Quarterman ("the Director") contends that Ries did not fairly present these three sub-claims to the state courts and the Court may not now consider them.  The Court must determine what claims were actually presented to, and decided by, the state courts in order to determine whether to reach the merits of Ries's three sub-claims.

In his application for state post-conviction relief, Ries claimed:

> Defense counsel clearly were aware of the potentially mitigating evidence in the State's exhibits, yet counsel did nothing to effectively marshal this evidence or subpoena witnesses from Applicant's past, such as counselors and psychologists from South Dakota, whose names and locations were set out in these records. Counsel failed to elicit any of the evidence of mental disturbance that had been documented since Applicant was 20 years old.

>           *               *               *

> . . . [T]he grievous error of counsel's failure to provide any mitigation evidence at the punishment stage in light of the clear availability of such evidence falls below a reasonableness standard, and thereby violates Strickland's first prong.

> . . . [As to] Strickland's second prong[,] Applicant would show that given the absolute lack of interpretive testimony in the form of a defense psychiatric expert in explaining Applicant's emotional past, the evidence that was admitted (in State's 290 and 291) (which should have been mitigating) was in fact extremely aggravating.  As it was presented to the jury, it was a big fat file of extensive records from the South Dakota criminal justice system, presumptively indicating life-long recidivism, an incorrigible refusal to conform, and early indications of continuing danger. . . . Applicant would show that the global failure of counsel to present any mitigating evidence clearly undermines [confidence in] this verdict, and warrants reversal.

The Court notes that parts of these paragraphs appear to refer to a different defendant, as Ries is not from South Dakota and the CPS records in his case concern events that occurred well

before he was twenty years old.[2]  It is also unclear what Ries's counsel meant by the statement that trial counsel failed to "effectively marshal" mitigating evidence.

Ries contends that the term "effectively marshal" refers to all of the things Ries could have done with the evidence of his upbringing—discussing it during *voir dire*, presenting it in great detail to the jury, and using it during closing arguments to create sympathy for him and to rebut the prosecution's argument that he did not deserve sympathy.  Ries argues, therefore, that all three sub-claims of his first claim were fairly presented in his state *habeas* application.  In the second paragraph quoted above, however, Ries twice states that his counsel did not present any mitigating evidence.  Because Ries does not now contend in any of his sub-claims that his trial counsel failed to present any mitigating evidence, the Director argues that none of these three sub-claims were fairly presented in Ries's state application.

The Court is of the opinion that the proper manner to discern what Ries fairly presented to the state courts is to analyze what the courts actually considered and decided.  The Texas Court of Criminal Appeals initially asked Ries's trial counsel to provide an affidavit explaining why they failed to present any mitigating evidence.  Rather than providing a justification for not offering any evidence, trial counsel stated that they had indeed presented mitigating evidence, outlining the testimony proffered, and indicated that they felt that sufficient evidence was presented to show mitigating factors.  In finding that counsel was not ineffective, the Court of Criminal Appeals apparently relied upon, and agreed with, counsel's statement to the effect that it was unnecessary

---

[2] Such lapses by state post-conviction counsel are especially prejudicial in these circumstances because *habeas corpus* relief is generally barred on claims not fairly presented to the state courts and a *habeas* petitioner cannot raise the ineffectiveness of state post-conviction counsel to avoid the procedural bar.  *See Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).

for them to have presented additional evidence in order to provide constitutionally effective assistance.

Based upon this analysis, the Court finds that the claim Ries presented to the state courts was the same as his argument in the second sub-claim of his first claim, *i.e.*, that his attorneys should have questioned the prosecution and defense witnesses more extensively and discussed the evidence in the CPS records in greater detail in order to emphasize his abusive and deprived upbringing.  Because the Court finds that Ries's sub-claims concerning *voir dire* and closing arguments were not fairly presented to the state courts, they remain unexhausted.

When a federal court is presented with an application containing both exhausted and unexhausted claims, it must determine whether the state courts would refuse to consider the merits of the unexhausted claims if they were presented in a successive state petition.  If it is entirely clear that the state courts would refuse to reach the merits of the unexhausted claims, the federal court will treat the unexhausted claims as if they had already been procedurally defaulted.  *See Finley*, 243 F.3d at 220.

To determine whether it is entirely clear that the state courts would refuse to address the merits of Ries's other two sub-claims, the Court must construe TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5 (Vernon 2005), the applicable state law.  This article provides, in relevant part:

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> > (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt; or

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

The Court finds that Ries's sub-claims concerning trial counsel's conduct during *voir dire* and closing arguments could have been presented in Ries's initial state *habeas* application and finds further that there is not clear and convincing evidence that, but for a violation of the United States Constitution, no rational juror would have answered either punishment issue in the State's favor.  Because it is entirely clear that the state courts would not reach the merits of Ries's two sub-claims if they were presented in a successive application for post-conviction relief, the Court will treat these two sub-claims as if they had already been procedurally defaulted.

As stated above, federal courts do not review procedurally barred claims unless the petitioner can establish either that he had good cause for failing fairly to present his claims in state court, and he would be prejudiced by not being given an opportunity to do so in the federal court, or that the federal court's failing to address the claims would result in a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 749-50; *Finley*, 243 F.3d at 220.  Ries maintains that he can satisfy the cause and prejudice exception, arguing that his failure to present his two other sub-claims to the state courts was due to the ineffective assistance rendered by his state post-conviction counsel.  It is well-settled in this circuit, however, that the ineffectiveness of state post-conviction counsel does not constitute cause for failing to exhaust claims.  *See, e.g.*, *Martinez*, 255 F.3d at 240-41.  Ries does not contend that he meets the fundamental miscarriage of justice exception, and

10

in view of the fact that the legal test for that exception is essentially the same as the standard for filing successive petitions in state court under TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a)(3), the Court's finding that Ries did not meet the state standard precludes his meeting the federal standard.  Because Ries satisfied neither exception to the procedural default rule, the Court will dismiss the first and third sub-claims of his first claim with prejudice.

2.   Analysis of the Merits

Under 28 U.S.C. § 2254, the Court's review of the second sub-claim of Ries's first claim is limited to determining whether the state courts' denial of the claim was contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Ries contends that the denial of his claim was contrary to, or the result of an unreasonable application of, the rules set forth in *Strickland*, 466 U.S. at 687, and *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

In *Wiggins*, the Supreme Court emphasized that counsel's "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'"  *Id.* (quoting *Strickland*, 466 U.S. at 690-91).  In the instant case, Ries does not accuse his counsel of failing to investigate the mitigating evidence; instead, he asserts that they failed to question the witnesses with sufficient thoroughly to make the details of Ries's upbringing have impact upon the jury.  In their affidavit, Ries's trial counsel stated that they felt that the records of Ries's social history and the testimony of the witnesses contained sufficient particulars of the abuse and deprivation he suffered for the jury to weigh his upbringing as a factor mitigating against a death

11

sentence.  Ries is correct that his trial counsel could have done more during the presentation of

the evidence to emphasize the suffering and trauma he experienced, thereby perhaps eliciting more

sympathy for him.  Nevertheless, as the degree of emphasis to be placed on the social history

evidence during the punishment phase of the trial appears to have been a strategic decision by

counsel,[3] made after thorough investigation, counsel's choice is unchallengeable.  *See id*.  Because

Ries cannot establish the "deficient conduct" element of the *Strickland* test for ineffective

assistance of counsel, it is unnecessary to analyze whether he can establish the "prejudice" prong

of the test.  The Court finds that the state courts' rejection of Ries's ineffective assistance of trial

counsel claim was neither contrary to, nor the result of an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States in *Strickland* and

*Wiggins*.  The Court, therefore, will deny Ries's first claim.

B.       Ineffective Assistance of Trial Counsel as to the Prosecution's Closing Argument

Ries's second claim is that his trial counsel failed to object to the prosecutor's expression

of personal opinions during closing argument.  In the first instance, the prosecution stated:

> Why do we have the death penalty?  I know some of you on this jury have thought
> about the death penalty and why, we as a country and we as a state, believe it's
> important.  I can tell you why I think it is.  I believe that when you take a human
> life, that if you as a society and you as a group of people, do not value that life
> enough to take a murderer's life, then you are not going to last very long.  You've
> got to stop people from causing death by breaking into their homes and murdering
> them.

---

[3] Ries's trial counsel discussed Ries's traumatic upbringing in considerable detail in closing arguments, quoting both from witness testimony and from Ries's CPS records.  Counsel argued that Ries's traumatic upbringing was not an excuse for committing the murder and that Ries alone bore responsibility for his actions, but it nevertheless weighed against death as punishment.  Counsel also contended that if Ries's life were spared, he would have a chance to recover from his upbringing and make a positive contribution to society because of his above-average intelligence.

In the second instance, the prosecutor stated:  "I have never asked a jury, Joey, to do something that I can't do myself.  And on the evidence in this case I can release the poison."

      1.   <u>Exhaustion</u>

In his state application for post-conviction relief, Ries claimed:  "Trial Counsel failed to provide effective assistance of counsel when they failed to object to the District Attorney in his jury argument telling the jury his personal belief as being improper argument thus preserving nothing for review on appeal."  Ries complained of only the first of the two above-quoted statements.

In his petition to this Court for a writ of *habeas corpus*, Ries makes the same claim, but he complains about both statements.  Because presenting material evidence to the federal courts which was not presented to the state courts fundamentally alters the substance of an ineffective assistance of counsel claim, *see Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003), *cert. denied*, 543 U.S. 835 (2004), the Director contends that adding the second statement improperly changes the nature of Ries's claim.  The Director maintains that, as a consequence, the Court should find that Ries did not fairly present the substance of this claim to the state courts.

As with the previous claim, it is necessary to review the state court record in order to determine what claims Ries fairly presented.  To ascertain whether to grant relief on a claim of improper prosecutorial argument, a court is required to review the closing arguments of both the prosecution and the defense in their entirety.  *See United States v. Young*, 470 U.S. 1, 12-13 (1985).  It is apparent from Findings of Fact Nos. 40 and 41 that the state courts did so and concluded:  "The argument by the District Attorney was a plea for law enforcement and a response to the jury argument of [defense] counsel.  The District Attorney did not compare the

evidence in this case with that of other cases, inject a personal opinion regarding the credibility of witness' [sic], or present himself as an expert in determining or setting a person's punishment for a particular crime."

Because the state courts necessarily reviewed and considered the second statement about which Ries complains in determining that the prosecution's closing argument was not improper, the Court finds that Ries's inclusion of the second statement in the present petition supplements, rather than fundamentally alters, the claim he made to the state courts.

2.   Analysis of the Merits

As stated previously, to establish a claim of ineffective assistance of counsel on federal *habeas* review, a petitioner must establish both that his counsel's performance was deficient and, had his counsel performed adequately, there is a reasonable probability that the result of his case would have been different. Because this claim was denied on the merits, to obtain *habeas corpus* relief, Ries must establish that the state courts' findings against Ries on both of these elements were objectively unreasonable.

To determine whether there was a reasonable probability of a different result had Ries's counsel objected to the prosecution's first argument, the Court must determine whether the objection, had it been made, would have been sustained. The state courts specifically found that the prosecutor's first argument was not improper because it was a plea for law enforcement and was invited by the arguments of defense counsel. *See* Conclusion of Law No. 24. Based upon this finding, the Court is of the opinion that had Ries's counsel objected, the objection would not have been sustained. Accordingly, there is no reasonable probability that the result of the punishment phase of Ries's trial would have been different.

14

The second statement is more problematic than the first, because in the first statement, the prosecutor expressed his personal opinion about a general matter—that the death penalty is necessary to protect society—while in the second statement, he expressed his personal opinion that Ries, specifically, deserved to die.   As with the first statement, however, it appears that the prosecutor's second statement may have been invited by the closing argument of defense counsel, who presented his summation in the form of a conversation between himself and Ries.   Defense counsel made statements such as, "I'm going to ask the twelve people to give you the rest of your life to explore your potential and to use it" and "I hope you will be given that opportunity." Whether intentional or not, such statements injected defense counsel's personal feelings and beliefs into the jury's determination of whether death was the appropriate punishment for Ries.   The Court finds that, just as with the prosecutor's other statement, had defense counsel objected to this argument, the objection would have been overruled on the grounds that the argument had been invited.   *See Hannah v. State*, 624 S.W.2d 750, 754 (Tex. App.—Houston [14th Dist.] 1981, pet. ref'd).   Accordingly, the Court finds that there is not a reasonable probability that, had Ries's counsel objected, the result of the punishment phase of his trial would have been different.[4] Because Ries cannot meet the second element of the *Strickland* test, the state courts' rejection of his second claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Strickland* and *Young*.   Thus, the Court will deny Ries's second claim.

---

[4] The federal law is somewhat different.  In *Young*, the Supreme Court held that it is improper for a prosecutor to express his personal belief as to the guilt of a defendant during closing arguments and the fact that such argument may have been invited by the defense's own improper argument does not render such a response appropriate.  *See* 470 U.S. at 16-20.  The Court concluded, however, that in deciding whether to overturn a conviction, the reviewing court may consider whether the prosecutor's remarks were invited in determining whether the trial was fundamentally unfair.  *See id.*

C.    Ineffective Assistance of Appellate Counsel as to Evidence of Remorse

Ries's third claim is that his appellate counsel provided ineffective assistance by failing to raise on appeal the issue of the trial court's refusal to admit evidence of his remorse during the guilt/innocence phase of the trial.  Ries gave a videotaped confession, during which he was asked whether he was sorry for what he had done.  He answered that he was and apologized to the victim's family.  Ries also discussed other crimes he had committed.  Ries's trial counsel objected to the redaction of his expression of remorse, but the court overruled his objection, characterizing the statement as "self-serving hearsay."  At the punishment phase of the trial, the prosecution again played the redacted videotape and, rather disingenuously, cited the tape as evidence that Ries had no remorse for his crime.  Ries's appellate counsel did not raise a claim that the court's refusal to direct the prosecution to play the entire videotape was erroneous.  Ries's post-conviction counsel subsequently asserted that his appellate counsel should have raised the claim and rendered ineffective assistance by not doing so.

1.    Exhaustion

The Director contends that this claim is different from the claim Ries made to the state courts and that it should be deemed unexhausted.  Again, the Court must determine the substance of the ineffective assistance of appellate counsel claim Ries presented to the state courts and compare it with the substance of Ries's present claim.

In his petition for state post-conviction relief, Ries claimed:

Appellant [sic] Counsel failed to provide effective assistance of counsel when he failed to bring fourth [sic] and brief the point that the trial court committed error when it allowed the State to redact the defendant's apology to the family prior to presenting the video tape of the defendant [sic] confession.

In his federal petition for a writ of *habeas corpus*, Ries claims:

16

> Appellate counsel was ineffective in not challenging the trial court's refusal to admit Mr. Ries's confession in its entirety. . . . the defense was hamstrung by the trial court's ruling, as the jury heard no evidence that Mr. Ries was remorseful.

The Court finds that, in contrast to the rather ambiguous and confusing ineffective assistance claim Ries made against his trial counsel in his state post-conviction application, Ries's claim against his appellate counsel was reasonably clear. The Director contends, however, that Ries's state claim is fundamentally different from his federal claim. The Director maintains that Ries's state claim focused on whether the trial court's ruling during the guilt/innocence phase of the trial was erroneous, while Ries's federal claim focuses on the prejudicial effect of the trial court's ruling on the punishment phase of the trial.

The Court disagrees. The record reflects that, while confessing to the crime, Ries expressed remorse. His expression of remorse had no relevance to the issue of his guilt; it was material only to the question of the severity of the punishment that should be imposed. Because, at the punishment phase of the trial, the jury is to consider all of the evidence adduced at the guilt phase of the trial, as well as additional evidence adduced during the punishment phase, the only reason Ries had for objecting to the trial court's refusal to allow the jury to observe his expression of remorse was that the failure to admit the evidence would negatively affect the jury's assessment of whether there were sufficient mitigating circumstances to spare his life.

Based on this scenario, at least two different arguments were available to Ries on appeal. He could have contended that the trial court's determination that his expression of remorse was "self-serving hearsay" was incorrect, or, he could have asserted that even if the court's hearsay ruling was correct, under these circumstances, fundamental fairness nevertheless required admission of the evidence. Ries objected at trial in a manner that was sufficiently general to

encompass either rationale, and he summarized his ineffective assistance claim in the same broad terms. In his post-conviction application, however, he left the spaces alloted to argument and legal authority blank.

The Director argues that Ries's current ineffective assistance of appellate counsel claim is fundamentally different from his state claim because the state claim contained neither argument nor legal authority, while the federal claim does.[5] The Fifth Circuit has explained that the reliance in federal court on new facts can fundamentally alter a claim previously presented to the state court without those facts. *See Dowthitt v. Johnson*, 230 F.3d 733, 745-46, 748 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001). The Court finds, however, in this case, that Ries's providing legal argument and citing authority to the federal court in support of an otherwise identical claim, for which he did not present argument or authority to the state courts, supplements, rather than fundamentally alters, his ineffective assistance of appellate counsel claim.[6]

2.    Analysis of the Merits

The test for ineffective assistance of appellate counsel is the same as the test for trial counsel—whether counsel's performance was deficient and, if so, whether there is a reasonable probability that, had counsel performed adequately, the result of the proceeding would have been

_____

[5] The Director does not contend that Ries originally argued in state court that the trial court's ruling that his apology was hearsay was incorrect as a matter of state evidence law, but then argued in federal court that, even though the trial court's hearsay ruling was correct, fundamental fairness required that his apology be admitted. Were that the case, the Court would find Ries's present claim so fundamentally different from his state claim as to be considered unexhausted.

[6] The Fifth Circuit has suggested that if the state court refused to address the merits of a claim because it found that the claim was inadequately briefed, the federal court may be precluded from addressing the merits of that claim. *See, e.g.*, *Salazar v. Dretke*, 419 F.3d 384, 395 & n.20 (5th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S. Ct. 1467 (2006). In the present case, however, the Texas Court of Criminal Appeals addressed the merits of Ries's ineffective assistance of appellate counsel claim.

different.  *See Amador v. Quarterman*, 458 F.3d 397, 410-11 (5th Cir. 2006).  To determine whether appellate counsel's performance was deficient, the Court applies the standard announced by the Fifth Circuit in *Schaetzle v. Cockrell*, 343 F.3d 440 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004).  "Counsel need not raise every nonfrivolous ground of appeal, but should instead present '[s]olid, meritorious arguments based upon directly controlling precedent.'"  *Id.* at 445 (quoting *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999)).  As the Fifth Circuit further explained:

> "Such directly controlling precedent is rare.  Often, factual differences will make authority easily distinguishable, whether persuasively or not.  In such cases, it is not necessarily providing ineffective assistance of counsel to fail to construct an argument that may or may not succeed.  But failure to raise a discrete, purely legal issue, where the precedent could not be more pellucid or applicable, denies adequate representation."

*Id.* (quoting *Williamson*, 183 F.3d at 463 n.7).  In the present case, the Court is of the opinion that the question of whether the fundamental fairness guaranteed by the Due Process Clause requires admission of an expression of remorse by a defendant in a capital case, even though the statement is otherwise inadmissible hearsay, is a discrete, purely legal issue.  The Court also finds that the Texas Court of Criminal Appeals' opinion in *Fuller v. State*, 829 S.W.2d 191, 207-09 (Tex. Crim. App. 1992), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995), is binding precedent which could not be more pellucid or applicable to this issue.[7]  Accordingly, unless Ries's appellate counsel had some strategic or tactical reason not to raise this issue on appeal, his failure to do so constituted deficient performance.

---

[7] The eighth claim of error in *Fuller* presented the issue of whether the Texas evidentiary rules excluding hearsay can be trumped by the notions of fundamental fairness embodied in the Due Process Clause of the United States Constitution when the hearsay evidence which is sought to be admitted is essential to the defense.  *See* 829 S.W.2d at 207.  The court held that, under appropriate circumstances, they can.  *See id.* at 208.

The Texas Court of Criminal Appeals determined that Ries's appellate counsel's performance was not deficient, finding that "[t]he decision to not present this issue on appeal was based on a reasonable and legitimate appellate strategy." Conclusion of Law No. 38; *accord* Finding of Fact No. 60.   On federal *habeas* review, this Court must defer to the state courts' determination on the issue of deficient performance unless that determination is objectively unreasonable. *See Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003).   Because there is no evidence in the record to support the finding that Ries's appellate counsel made a strategic decision not to raise this claim and, moreover, because the Court can think of no valid reason to forego raising the claim, the Court finds that the state courts' conclusion that Ries's appellate counsel's performance was not deficient is objectively unreasonable.

Considering the second element of the *Strickland* test, the state courts determined that, had Ries's appellate counsel raised this claim, there was not a reasonable probability that the result of his appeal would have been different.   *See* Finding of Fact No. 61.   As with the deficient performance prong of the test, the issue for the Court is whether the state courts' determination that Ries was not prejudiced by his counsel's performance is objectionably unreasonable.

In *Fuller*, a defendant awaiting trial confided to fellow jail inmates that he was not guilty of the offense for which he was facing trial, but that he had agreed to "take the rap" for the actual perpetrator.   *See* 829 S.W.2d at 207.   A deputy sheriff, who overheard the conversation, prepared a report which contained quotations of some of the remarks.   *See id*.   At trial, the defendant, apparently having had a change of heart, sought to introduce the report.   *See id*.   The trial court denied the request on the grounds that the report was hearsay and did not meet any exception to

20

the general rule that hearsay evidence was inadmissible.  *See id.* at 208.  On appeal, the Texas Court of Criminal Appeals cited *Green v. Georgia*, 442 U.S. 95 (1979), for the principle that "'where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.'"  *Fuller*, 829 S.W.2d at 207 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).  In *Green,* the United States Supreme Court held that a defendant could not be prohibited from introducing an out-of-court statement by a co-perpetrator that the defendant was not present when the homicide in question took place, even though the statement was not admissible under any exception to the state's hearsay rules.  *See* 442 U.S. at 97.

The courts in both *Fuller* and *Green* found it necessary, *inter alia*, for the hearsay statement at issue to have independent indicia of reliability in order to be admissible under the fundamental fairness exception to the hearsay rules.  In *Green,* the Court found that the admission by the co-perpetrator that he alone killed the victim was likely to be reliable because it was an admission against interest.  *See id.*  In *Fuller*, however, the court found that because the deputy sheriff's report "lack[ed] any distinguishing mark of reliability," there was no reason to except it from the state hearsay rules.  829 S.W.2d at 208.

In the case at bar, Ries does not contend that his statement of remorse has any distinguishing mark of reliability.  He does not assert that his apology was a statement against his interest; indeed, he does not take issue with the trial court's determination that his apology was "self-serving."  Ries's apology, therefore, is more akin to the hearsay statement at issue in *Fuller* than the hearsay statement in dispute in *Green*.  Because fundamental fairness would not require that the trial court admit Ries's apology during the guilt/innocence phase of the trial, the state

courts' determination that there is not a reasonable probability that, had Ries's appellate counsel raised this claim on direct appeal, the result of the proceeding would have been different, is not objectively unreasonable.  The Court finds that the state courts' rejection of Ries's third claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Young* and *Green*.  The Court, therefore, will deny Ries's third claim.

VI.    Conclusion

Because the Court finds that the two of the three sub-claims in Ries's first claim have been procedurally defaulted, it will dismiss those two sub-claims with prejudice.  Because the Court finds that the state courts' denial of Ries's remaining claims was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Strickland v. Washington*, *Wiggins v. Georgia*, *Green v. Georgia*, and *United States v. Young*, it will deny his petition for a writ of *habeas corpus*.  An order and judgment to this effect will be entered.

SIGNED at Beaumont, Texas, this 11th day of October, 2006.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE